M. Vivienne Popperl, OSB #853055
Office of the United States Trustee
620 SW Main Street, Suite 213
Portland, OR 97205
Telephone: (503) 326-7656

Attorney for Gail B. Geiger, Acting United States Trustee

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re ) | Case No. 14-32012-rld7 |
| ) | |
| Ronald Eugene Stover, ) | |
| ) | |
| Debtor ) | |
| ) | |
| _____ ) | Adversary No. 14- |
| ) | |
| United States Trustee, ) | COMPLAINT FOR DENIAL OF |
| ) | DISCHARGE |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| Ronald Eugene Stover, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

The Acting United States Trustee, Gail B. Geiger (the "United States Trustee"), plaintiff, respectfully alleges:

1.  This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157. This adversary proceeding relates to the chapter 7 bankruptcy case *In re Ronald Eugene Stover*, Case No. 14-32012-rld7, pending in the United States Bankruptcy Court for the District of Oregon, Portland Division. The matter in controversy arises under

Page 1-Complaint For Denial Of Discharge

11 U.S.C. § 727(c). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J). Venue is proper pursuant to 28 U.S.C. § 1409.

2. The United States Trustee is authorized to file this complaint pursuant to 11 U.S.C. § 727(c).

## The Bankruptcy Case – Procedural Background

3. Ronald Eugene Stover (the "Defendant") filed this voluntary chapter 7 case on December 13, 2013 in the Eastern District of Texas, Sherman Division.

4. On March 25, 2014 the court entered an order transferring venue of this chapter 7 case to the District of Oregon Portland Division, finding, *inter alia*, that the Defendant resided in Oregon, that his financial records were located in Oregon, and that potential witnesses were located in Oregon.

5. The Defendant signed his bankruptcy petition (the "Petition") under penalty of perjury on December 13, 2013. An electronic version of the Petition was filed with the court on December 13, 2013.

6. The Defendant signed his original bankruptcy schedules A through J (the "Original Schedules"), and a Statement of Financial Affairs (the "SOFA") under penalty of perjury, on January 9, 2014. Electronic versions of these documents were filed with the court on January 9, 2014.

7. The Defendant signed an Amended SOFA (the "Amended SOFA") on January 24, 2014. An electronic version of this document was filed with the court on January 24, 2014.

8. Together, the Petition, the Original Schedules, the SOFA, and the Amended SOFA, comprise the "Bankruptcy Documents."

9. The Defendant appeared and answered questions under oath at an adjourned meeting of creditors on February 21, 2014 in Plano Texas (the "Texas Meeting of Creditors"). The meeting was not concluded.

10. The Defendant appeared and answered questions under oath at a further adjourned meeting of creditors on July 15, 2014 in Portland, Oregon (the "Oregon Meeting of Creditors").

### The Bankruptcy Documents

11. The Defendant listed no real estate in Schedule A, the real property schedule included in the Bankruptcy Documents. He listed personal property totaling $2,115 including $115 in a bank account at Northstar Bank of Texas in Schedule B, the personal property schedule included in the Bankruptcy Documents.

12. The Defendant listed no secured or priority debt and unsecured debt of $9,572,399 in the Bankruptcy Documents.

13. The Defendant listed no income and no expenses on Schedules I and J included in the Bankruptcy Documents.

14. In response to question 10 on the SOFA and the Amended SOFA the Defendant listed no transfers of property out of the ordinary course of business in the two years before he filed his bankruptcy case.

15. In response to question 14 on the SOFA and the Amended SOFA the Defendant listed no property owned by another person that he holds or controls.

16. In response to question 18 on the SOFA and the Amended SOFA the Defendant listed two businesses in which he held an interest in the six years immediately preceding the commencement of his bankruptcy case: RS Development Services, and Tri-Core Funding Group, LLC.

Page 3-Complaint For Denial Of Discharge

17. At the Texas Meeting of Creditors and the Oregon Meeting of Creditors the Defendant stated that the Bankruptcy Documents were true and accurate and that he had listed all of his assets.

### Factual Background

18. The Defendant is a 62 year old business man and college graduate with forty years of experience in banking, real estate development in Oregon, California, Mexico and Hawaii, business consulting for companies in financial distress, and raising investment capital for various business opportunities.

19. The Defendant's wife, Linda Carolyn Stover, volunteers as a bible study teacher. She has no independent source of income. She is a full time mother, grandmother and wife who has not participated in her husband's business affairs other than by signing documents when the Defendant requested that she do so.

20. Since at least 2004 the Defendant raised millions of dollars from private investors for a variety of projects including a heavy equipment company, residential real estate, and the development of a block of real estate comprising the Flynt building in Beverly Hills, CA, known as the "Wilshire Project."

21. None of the projects for which the Defendant raised money over the last decade came to fruition. At least six companies set up by the Defendant or related to the Defendant and/or his business entities filed for bankruptcy protection. These include *In re Rodman, LLC*, Case No. 11-40097 (E.D. Texas, Sherman Division) filed January 5, 2011; *In re Xtreme Iron Holdings, LLC*, Case No. 12-33832-HDH-11(N.D. Texas, Dallas Division) filed June 13, 2012; *In re Xtreme Iron, LLC*, Case No. 12-34540-HDH-11 (N.D.Texas, Dallas Division) filed July 11, 2012; *In re Xtreme Iron Hickory Creek, LLC*, Case No. 12-41750 (E.D. Texas, Sherman

Division) filed June 29, 2012; *In re RFH Holdings, LLC*, Case No. 11-38027-elp11 (D. Oregon, Portland Division) filed September 15, 2011; and *In re AD Holdings, LLC*, Case No. 13-52247-btb-11 (D. Nevada) filed on November 25, 2013.

22. In addition to the corporate bankruptcy cases listed above, the Defendant also arranged for and filed a bankruptcy case in the name of his wife in an attempt to stave off foreclosure of a piece of real estate in California. *In re Linda C. Stover*, Case No. 06-10122-GM (C.D. California) filed on February 1, 2006.

23. In Linda Stover's bankruptcy case the Defendant signed a declaration under penalty of perjury dated April 25, 2006 stating, among other things, that he always made the business and financial decisions for his family, that he was advised many years ago not to put real estate into his name, and that as a result, the real property that he and his wife owned in Toluca Lake, California, was in his wife's name.

24. Linda Stover's bankruptcy schedules and statement of financial affairs indicate that the Defendant signed them for Linda Stover by Power of Attorney.

25. Since the 1990s the Defendant provided his services through wholly owned companies, including, R.S. Development Services, Inc., and Tri-Core Funding Group, LLC.

26. The Defendant arranged for payment of his services through his wholly owned companies which, in turn, paid for his personal expenses and those of his wife, Linda Carolyn Stover, daughters Angela M. Dimpflmaier, Christie Nichole Giboney, son Jeff Stover and their families.

27. The Defendant, through his wholly owned companies, employed various individuals to assist him with both personal and business matters. These individuals included Margene Bellamy ("Bellamy") and Jean S. Solberg ("Solberg").

Page 5-Complaint For Denial Of Discharge

28. Bellamy provided book-keeping services by posting transactions into various QuickBooks accounts and making disbursements, all as directed by the Defendant.

29. Disbursements made and recorded by Bellamy as directed by the Defendant included paying for the personal expenses of the Defendant and his family members from accounts in the name of the Defendant's business entities, including, RS Development Services, Inc. and Tri-Core Funding Group, LLC.

30. Solberg provided land use and zoning consultation and due diligence review for the Defendant's commercial projects. At the Defendant's request she also acted as a manager for companies related to the Defendant which filed for bankruptcy protection, including, AD Holdings, LLC, RFH Holdings, LLC and Xtreme Iron Holdings, LLC. Solberg also provided zoning and due diligence services for real estate acquisitions for the Defendant, his wife, daughters and son.

31. Between August 2009 and May 2010, Beta Capital, LLC and its members ("Beta") made a series of loans of almost $4,000,000 to Rodman, LLC, R.S. Development Services, Inc. and Vilhauer Capital Partners, LLC. (now known as Xtreme Iron Holdings, LLC).

32. The Defendant, the 100% owner of R.S. Development, Inc. was also the manager of Xtreme Iron Holdings, LLC. He personally guaranteed the loans from Beta.

33. The loans went into default. Beta filed suit against its borrowers including the Defendant. On July 28, 2011, the court entered a final judgment in Beta's behalf which included a finding that the Defendant was jointly and severally liable to Beta for $2,769,391.82 plus $175,000 in attorneys' fees and litigation expenses. Beta vigorously attempted to collect on the judgment since its entry.

34. From approximately March, 2012 through April, 2013, the Defendant solicited and obtained loans in the amount of approximately $1,705,000 from Stephen A. Scully ("Scully") and SDS Fontana Holdings, Inc. ("SDS") memorialized by promissory notes and guaranteed by the Defendant.

35. On or about November 5, 2013, Scully and SDS filed suit against the Defendant, Tri-Core Funding Group, LLC, Tri-Core Leasing, LLC, Ironland Holdings, LLC, Core Iron Equipment, LLC and others in the Superior Court for the State Of California, County of Orange. Allegations included breach of promissory note, money had and received, fraud and deceit, violation of California Securities Laws, negligent misrepresentation, and violation of California Business and Professions Code.

### Income-RS Development, Inc. and Tri-Core Funding Group, Inc.

36. The Defendant listed no income and no expenses in schedules I and J in the Bankruptcy Documents. He listed no cash on hand and $115 in a bank account on Schedule B in the Bankruptcy Documents.

37. In response to question one on the SOFA and the Amended SOFA the Defendant stated that his income in 2011, 2012, and 2013 was "unknown-tax returns have not been filed-extension on file."

38. In response to question two on the SOFA and the Amended SOFA the Defendant stated that he had no income other than from employment or operation of business during the two years immediately preceding the commencement of his case.

39. At the Texas Meeting of Creditors the Defendant stated that he did not think he received a distribution from Tri-Core Funding Group, that he had not received income for a while because of his health problems, and that the last time he had income was late 2012.

40. From at least November, 2011 through December 13, 2013, the date the Defendant filed his bankruptcy case, he controlled the receipt and disbursement of approximately $5.9 million dollars through bank accounts in the name of his related entities including, R.S. Development Services, Inc., Tri-Core Funding Group, LLC, Tri-Core Leasing, LLC, AD Holdings, LLC, and other accounts in his name and that of his wife, Linda Carolyn Stover.

41. From at least January, 2011 through December, 2012, the Defendant provided an American Express credit card in his name with an account number ending in 7007 to his wife, Linda Carolyn Stover, his daughters, Angela M. Dimpflmaier, Christie Nichole Giboney and her spouse Phil Giboney, and his son Jeff Stover (the "Family Members").

42. From at least January, 2011 through December, 2012, the Defendant and the Family Members charged approximately $724,657.67 on the American Express Card.

43. Upon information and belief, the Defendant paid off the charges on the American Express credit card through R.S. Development Services, Inc. or other companies he controlled.

44. In 2013 payments in the amount of approximately $ 231,624.22 were made for personal expenses of the Defendant and the Family Members. Such payments were recorded in the QuickBooks files of Tri Core Funding, Inc. and Tri Core Leasing, LLC ("Tri Core") as "Family Services" by Bellamy under the Defendant's direction.

45. At the Oregon Meeting of Creditors the Defendant stated that he provided his daughters with the American Express Card which he set up for certain business activities because they assisted him with the business activities.

46. Angela Dimpflmeier and Christie Giboney have never worked for the Defendant or any of his related companies.

47.     The Defendant and his wife, Linda Carolyn Stover, opened a joint bank account with a number ending in 5156 at Bank of America after the Defendant filed his bankruptcy case. From January 2014 through May 16, 2014, at least $600,000 was deposited into this account.

48.     From January 2014 through May 16, 2014, the Defendant made numerous substantial payments to the Family Members from the Bank of America account ending in 5156 for their personal expenses.

### Income-Airscape Innovations and True Wealth Management

49.     In 2013 the Defendant began exploring a new investment opportunity for purchasing, modifying and reselling aircraft.

50.     In or around May and June 2013 the Defendant received at least $220,000 from Mike McCurdy and/or True Wealth Management to invest in the new opportunity.

51.      In or around the first quarter of 2014 the Defendant formed Airscape Innovations, a Delaware company created as a vehicle for his new investment opportunity.

52.     At the Oregon Meeting of Creditors in July 2014 the Defendant stated that he and his wife, Linda Carolyn Stover, had borrowed about $50,000 from an entity called True Wealth Management, an entity that was proposing to finance projects on which the Defendant was hoping to work.

53.     Upon information and belief, the Defendant received over $600,000 from True Wealth Management and other entities as contributions to or investments in Airscape Innovations since January 1, 2014.

54.     Upon information and belief, after he filed his bankruptcy case, the Defendant made substantial payments far in excess of $50,000 for his personal expenses and for those of the Family Members from the Bank Account ending in 5156 at Bank of America.

55. The Defendant did not list the new investment opportunity in the Bankruptcy Documents.

56. At the Texas Meeting of Creditors the Defendant stated that he intended to return to work but did not yet know for whom.

### Real Estate- Antioch Downs

57. Since at least 2006 the Defendant and his wife of almost 40 years, Linda Carolyn Stover, lived in a residence located on Antioch Downs in Tualatin, Oregon (the "Antioch Property") which the Defendant estimates to be worth $800,0000 to $1,000,000.

58. The Defendant maintains an office in a separate building on the Antioch Property.

59. The Defendant stated that his two daughters purchased the Antioch Property as a "fixer upper" but were unable to sell it, and that he and his wife rent the Antioch Property from them.

60. The Defendant's wife, Linda Carolyn Stover, originally identified and chose the Antioch Property based on her research of pastors and churches in the vicinity and for its natural surroundings.

61. In or about April, 2006, Christie Giboney and Angela Dimpflmaier were recorded as the purchasers of the Antioch Property for $1,595,000 with two loans from Countrywide Home Loans, Inc.

62. In April, 2006, the Defendant and his wife signed a three year lease with Angela Dimpflmaier and Christie Giboney for the Antioch Property. Upon information and belief, they did not enter into a new written lease agreement after the term of the 2006 lease expired in 2009.

63. The monthly rental amount was approximately $8,500 but the Defendant and his wife have not paid rent since at least November, 2012. The mortgage on the Antioch residence is in arrears.

64. Angela Dimpflmaier and Christie Giboney did not choose the Antioch Property for investment or initiate its purchase.

65. From on or about January, 2008, through September, 2008, the Defendant was involved in raising funds for a real estate development project in Mexico. He worked with Shellie Melissa Halper and The Mortgage Center Services, Inc. ("TMCS") to do so, entering into a series of promissory notes memorializing the transactions. Upon information and belief, the Defendant offered to secure at least one of the notes with a deed of trust on the Antioch Property.

66. In or about April, 2008, Peak Holdings, LLC ("Peak") loaned approximately $675,000 to the Defendant and JAC Capital, LLC. The Defendant signed two promissory notes in favor of Peak in his individual capacity and as President and Secretary of RS Development Service, Inc. on behalf of JAC Capital, LLC.

67. The two promissory notes in favor of Peak were secured by deeds of trust on the Antioch Property and by RS Development Services, Inc.'s membership interest in JAC Capital Fund, LLC.

**Real Estate-RFH Holdings, LLC and Montgomery Way**

68. Since approximately 2009 the Defendant's daughter, Angela Dimpflmaier and her spouse lived at 7350 SW Montgomery Way, Wilsonville, OR (the "Montgomery Way Property").

69. RFH Holdings, LLC ("RFH"), wholly owned by the Defendant, filed a chapter 11 bankruptcy case on September 15, 2011.

70. An option to purchase the Montgomery Way Property was listed on the schedule of personal property listed on Schedule B filed in the RFH case.

71. Solberg, as President of Jean S. Solberg, Inc., manager of RFH, signed the documents filed in the RFH chapter 11 case and appeared at the meeting of creditors on October 25, 2011.

72. At the RFH meeting of creditors Solberg testified that the Defendant would fund RFH to exercise the option to purchase the Montgomery Way Property.

73. On October 21, 2011, RFH filed a motion for authority to exercise option to purchase real estate (Doc. #26) which recited that the Defendant was prepared to make a capital contribution to RFH to exercise the option.

74. In or about October, 2011, the Defendant initiated the formation of A.D. Holdings, LLC, ("AD Holdings") a Nevada Limited Liability Company owned by Linda Carolyn Stover.

75. In or about November, 2011, AD Holdings exercised the option to purchase the Montgomery Way Property from Paul and Elissa Scott. The Defendant and Linda Carolyn Stover provided a cash down payment of $231,443.22 to facilitate the purchase.

76. On November 18, 2011 the Bankruptcy Court entered an order granting RFH's motion to dismiss its chapter 11 case.

## Personal property

77. On the schedule of personal property, Schedule B, included in the Bankruptcy Documents, the Defendant listed no household goods and furnishings, no audio, video and computer equipment, no books, pictures, antiques and collectibles, no interests in partnerships or joint ventures, no accounts receivable, vehicles, office equipment, furnishings and supplies used in a business.

78. At the Texas Meeting of Creditors the Defendant stated that he did not own any household goods and furnishings, did not know who paid for his wife's household goods and furnishings, and that he had not owned any household goods and furnishings since the 1970s.

79. The Defendant listed no cash on hand and an interest in one bank account at Northstar Bank of Texas with a balance of $115 in Schedule B included in the Bankruptcy Documents.

80. At the Texas Meeting of Creditors the Defendant stated that he did not know where his wife maintained a bank account and that he did not handle or have anything to do with his wife's affairs.

81. At the Oregon Meeting of Creditors the Defendant stated that he was not involved in his wife's 2006 bankruptcy case.

82. At the Oregon Meeting of Creditors in July 2014 the Defendant did not disclose his activities in relation to the Airscape Innovations opportunity in the year before he filed his bankruptcy case. He stated that he had done no consulting work since he filed his bankruptcy case.

83. At the Oregon Meeting of Creditors the Defendant denied that he had transferred any assets out of the ordinary course of business or made gifts other than nominal holiday gifts in the four years prior to filing his bankruptcy case.

**Books and Records**

84. The Defendant maintained direction and control over a detailed and extensive system of QuickBooks records for entities which he owned directly or indirectly including those of R.S. Development Services, Inc., Tri-Core Funding, Inc., Tri-Core Leasing, LLC and others.

85. The Defendant authorized and directed disbursements from bank accounts in the name of entities which he owned directly or indirectly including those of R.S. Development Services, Inc., Tri-Core Funding, Inc., Tri-Core Leasing, LLC and others.

86. The Defendant provided information and direction to Bellamy regarding the description and characterization in the QuickBooks records of monies deposited into and disbursed from bank accounts held in the name of such entities.

87. In several instances the descriptions of the nature of the disbursements in the QuickBooks records for entities which the Defendant owned directly or indirectly including those of R.S. Development Services, Inc., Tri-Core Funding, Inc., Tri-Core Leasing, LLC and others were mischaracterized as "consulting fees" or other business related services instead of payments for personal expenses of the Defendant and the Family Members.

## FIRST CLAIM FOR RELIEF

## Denial of Discharge-11 U.S.C. §727 (a)(4)(A)

(False Statements in Bankruptcy Documents)

88. The United States Trustee realleges paragraphs 1 through 87.

89. The Defendant's discharge should be denied because he knowingly and fraudulently made materially false oaths in the Bankruptcy Documents in one or more of the following respects:

   a) He listed no interest in real estate in Schedule A;

   b) He listed only $2,115 in personal property in Schedule B;

   c) He listed no income and no expenses on Schedules I and J;

   d) He listed no transfers of property out of the ordinary course of business in response to question 10 on the SOFA and the Amended SOFA;

   e) He did not list all businesses in which he had an interest in the six years prior to filing his bankruptcy case in response to question 18 on the SOFA and the Amended SOFA;

   f) He stated that his income for 2011, 2012 and 2013 from employment or operation of business was "unknown" in response to question 1 on the SOFA and the Amended SOFA.

## SECOND CLAIM FOR RELIEF

## Denial of Discharge – 11 U.S.C. § 727(a)(4)(A)

(False statements at meeting of creditors)

90. The United States Trustee realleges paragraphs 1 through 87.

91. The Defendant's discharge should be denied because he knowingly and fraudulently made materially false oaths during the Texas and Oregon Meetings of Creditors in one or more of the following respects:

   a) He stated at both the Texas Meeting of Creditors and the Oregon Meeting of Creditors that the Bankruptcy Documents were true and accurate and that he had listed all of his assets;

   b) He stated at the Texas Meeting of Creditors that he did not think he received a distribution from Tri-Core Funding Group;

   c) He stated at the Texas Meeting of Creditors that he had not received income since late 2012;

   d) He stated at the Oregon Meeting of Creditors that he provided his daughters with access to his American Express Card which he set up for certain business activities because they assisted him with the business activities;

   e) At the Oregon Meeting of Creditors he characterized the money that he and his wife had received from True Wealth Management as a loan and failed to disclose that they received approximately $600,000 rather than $50,000;

   f) He stated at the Texas Meeting of Creditors that his daughters purchased the Antioch Property as a "fixer-upper" but were unable to sell it and that he and his wife rented the Antioch Property from them;

g) He stated at the Texas Meeting of Creditors that he did not own any household goods and furnishings and did not know who paid for his wife's household goods and furnishings.

h) He stated at the Texas Meeting of Creditors that he did not know where his wife maintained her bank accounts, and did not handle or have anything to do with his wife's affairs;

i) He stated at the Oregon Meeting of Creditors that he was not involved in his wife's 2006 chapter 11 bankruptcy case;

j) He stated at the Oregon Meeting of Creditors that he had done no consulting work since he filed his bankruptcy case;

k) At the Oregon Meeting of Creditors he denied that he had transferred any assets out of the ordinary course of business or made gifts other than nominal holiday gifts in the four years before he filed his bankruptcy case.

### THIRD CLAIM FOR RELIEF

### Denial of Discharge – 11 U.S.C. § 727(a)(2)(A) and (B)

(Concealment of the debtor's property before and after case filing)

92. The United States Trustee realleges paragraphs 1 through 87.

93. The Defendant's discharge should be denied because, with intent to hinder, delay, or defraud a creditor or an officer of the estate, the Defendant concealed his interest in the following:

   a) The Antioch Property;
   b) The Montgomery Way Property;
   c) Airscape Innovations;
   d) RFH Holdings, LLC;

e) Tri-Core Leasing, LLC;

f) Monies received from potential investors in the Airscape Innovations opportunity.

## FOURTH CLAIM FOR RELIEF

### Denial of Discharge-11 U.S.C. § 727(a)(3)

(Falsification of books, documents, records and papers)

94. The United States Trustee realleges paragraphs 1 through 87.

95. The Defendant's discharge should be denied because the Defendant falsified recorded information, including books, documents, records and papers, from which the Defendant's financial condition or business transactions might be ascertained by overseeing a scheme which included the falsification of the records of R.S.Development, Inc., Tri-Core Funding Group, Inc., Tri-Core Leasing, LLC and other entities related to the Defendant. The Defendant's acts were not justified under all of the circumstances of the case.

## FIFTH CLAIM FOR RELIEF

### Denial of Discharge-11 U.S.C. § 727(a)(5)

(Failure to explain loss of assets)

96. The United States Trustee realleges paragraphs 1 through 87.

97. The Defendant's discharge should be denied because he has failed to explain satisfactorily any loss of assets or deficiency of assets to meet his liabilities as follows:

a) In the two years before he filed his bankruptcy case, the Defendant controlled the receipt and disbursement of approximately $5.9 million yet he disclosed no cash on hand and only $115 in a bank account in his Bankruptcy Documents.

WHEREFORE, plaintiff, the United States Trustee prays:

1. That the Defendant's discharge be denied;

2. That the United States Trustee be awarded costs as allowed by the Court; and

3. For such other and further relief as the Court deems just and proper.

DATED this 18th day of November, 2014.

    Respectfully submitted,
    GAIL BREHM GEIGER
    Acting United States Trustee

    <u>/s/ M. Vivienne Popperl</u>
    M. Vivienne Popperl, OSB #853055
    Trial Attorney